UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Olin Corporation; and Pioneer Americas, LLC d/b/a Olin Chlor Alkali Products, </br></br>    Plaintiffs, </br> vs. </br></br>Continental Casualty Company, </br></br>    Defendant. | Case No.: 2:10-cv-00623-GMN-NJK </br>      2:10-cv-01298-GMN-NJK </br></br>**ORDER** |
| Continental Casualty Company, </br></br>    Plaintiff, </br> vs. </br></br>Olin Corporation, </br></br>    Defendant. | |

  Pending before the Court is Continental Casualty Company ("Continental")'s Motion for Summary Judgment as to Choice of Law, Counts I-IV and Continental's Complaint for Declaratory Judgment (ECF No. 199) and Memorandum in Support (ECF No. 201). Olin Corporation ("Olin Corp.") and Pioneer Americas, LLC d/b/a Olin Chlor Alkali Products ("Pioneer") (collectively, "Olin/Pioneer") have filed a Response (ECF No. 208), accompanied by an Appendix (ECF Nos. 209-213). Continental has filed a Reply (ECF No. 215-1).

  With the instant motion, Continental also filed a Statement of Undisputed Material Facts (ECF No. 200), to which Olin/Pioneer filed a Response (ECF No. 214).

## I. PROCEDURAL HISTORY

On April 29, 2010, Olin Corporation and Pioneer Americas, LLC d/b/a Olin Chlor Alkali Products (collectively, "Olin/Pioneer") filed a Complaint before this Court against Continental Casualty Company ("Continental"); Factory Mutual Insurance Company; Zurich American Insurance Company; Zurich Insurance Ireland, Ltd.; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; and Ace American Insurance Company. (ECF No. 1.)  Since then all defendants except Continental have been dismissed pursuant to the parties' stipulation dismissing Count V of the Complaint. (Order on Stipulation, ECF No. 205.)  In their Complaint, Olin/Pioneer have alleged the following four causes of action against Continental: (1) Breach of Contract; (2) Breach of the Duty of Good Faith and Fair Dealing; (3) Violation of Nevada Revised Statutes § 686A.310; and (4) Declaratory Judgment – Right to Recover Under Continental Casualty's Boiler and Machinery Policy. (ECF No. 1.)  Pursuant to the parties' representations to the Court on January 28, 2013, Counts II and III are dismissed upon agreement of the parties, and the relevant portions of the instant motion are withdrawn.

Prior to the initiation of this action, in February 2010, Continental had filed suit against Olin Corporation ("Olin Corp.") for declaratory judgment on two causes of action in the United States District Court for the Eastern District of Missouri. *Cont'l Cas. Co. v. Olin Corp.*, No. 4:10-cv-00343-JCH, 2010 WL 5647120, 2010 U.S. Dist. LEXIS 77277 (E.D. Mo. July 30, 2010).  In the Missouri action Olin Corp. had moved to dismiss or transfer venue, and the Missouri court granted the motion to transfer venue to this Court. *Id.*  After transfer, Olin Corp. moved to stay or consolidate with the instant action. Mot. to Stay or to Consolidate, *Cont'l Cas. Co. v. Olin Corp.*, No. 2:10-cv-01298-GMN-PAL (D. Nev. Sept. 13, 2010), ECF No. 31.  Before the Court ruled on the motion, the parties filed a Stipulation to Consolidate with the instant action "for the purposes of discovery

1  and motion practice," and "reserve[d] the issue of the consolidation . . . for purposes of
2  trial until after the close of discovery in the consolidated proceeding." Stipulation to
3  Consolidate, *Cont'l Cas. Co. v. Olin Corp.*, No. 2:10-cv-01298-GMN-PAL (D. Nev.
4  Sept. 13, 2010), ECF No. 42.  The Court so ordered. *Id*.

Discovery closed on December 16, 2011. (Scheduling Order, ECF No. 134.) Motions were due by December 30, 2011. (Order on Stipulation, ECF No. 147.) On July 12, 2012, the Court denied without prejudice the parties' motions for summary judgment, and Continental re-filed the instant motion for summary judgment on July 16, 2012. (Order, ECF No. 196; Mot. Summ. J., ECF No. 199.) The motion was fully briefed as of September 5, 2012. (Reply, ECF No. 219.)

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

## III. DISCUSSION

At issue in this case are: (1) the interpretation of the insurance policy and (2) the extent of Olin/Pioneer's right to recover under the policy.  All the claims turn on these issues, including Continental's two causes of action for declaratory judgment as to coverage and as to the cooperation clause, as well as each of Olin/Pioneer's remaining causes of action: (I) Breach of Contract; and (IV) Declaratory Judgment – Right to Recover Under Continental Casualty's Boiler and Machinery Policy.

In its motion, Continental requests the Court to enter summary judgment in its favor as to Olin/Pioneer's complaint against Continental, Choice of Law, and Continental's Complaint for Declaratory Judgment. (Pls.' Mot. Summ. J., ECF Nos. 199, 200, 201.)

Continental asks the Court to determine as a matter of law that:

(a) The Continental Boiler & Machinery Policy does not provide coverage for the December 25, 2008 Cell Circuit Damage because corrosion is not an Accident and, as such, the Cell Circuit Failure is not a Covered Cause of Loss;

(b) Continental Casualty did not breach its insurance contract with Plaintiffs because it correctly determined that no coverage existed under the Boiler & Machinery Policy for the Cell Circuit Damage;

(c) New York law applies under Nevada's choice of law rules; and

(d) Continental Casualty made a reasonable coverage determination in good faith.

(Mot. Summ. J., 2:6-13, ECF No. 199.) Because Counts II and III have been dismissed by the parties, the Court will only discuss the motion as to Counts I and IV of Olin's Complaint, and Continental's Complaint for Declaratory Judgment.

Olin/Pioneer allege that Continental violated the terms of the policy by denying coverage for the December 25, 2008 Cell Circuit Failure and Damage. The language of the policy states that a "Covered Cause of Loss is an 'accident' to an 'object'" and that "corrosion" is not an accident under its definition of "Accident." (Boiler and Machinery Policy, Ex. 23 to Pls.' App., ECF No. 211-1.) The Policy does not define "corrosion." (*Id.*) Accordingly, Continental argues that the cause of damage was simply corrosion and that therefore the denial of coverage was legitimate. However, as discussed below, the Court cannot find an absence of genuine issue of fact as to the cause of the damage and as to the scope of the policy.

**A.   Undisputed Facts**

**The Henderson Plant**

Olin/Pioneer own and operate a chlor alkali plant located in Henderson, Nevada ("the Henderson Plant"). The Henderson Plant separates salt-water brine into chlorine, caustic soda, and hydrogen gas, and then processes these chemicals so that they can be

sold on the market. The salt-water brine is initially separated into chlorine, cell liquor (dilute caustic soda), and hydrogen in the "Cell Circuit." The Cell Circuit is composed of 180 electrolytic diaphragm cells in which an electrochemical reaction separates the salt-water brine into chlorine gas, hydrogen gas, and cell liquor. Each electrolytic diaphragm cell contains a cell top, a cathode, an anode, an asbestos diaphragm, a base plate, a cell bottom gasket and a cell top gasket. The chlorine is processed in the "Chlorine Liquefaction System" where chlorine gas from the Cell Circuit is liquefied and impurities are removed. The Chlorine Liquefaction System is a closed system, and chlorine is pulled through it by a compressor. Two key parts of the Chlorine Liquefaction System are the "Wet Brinks" and "Dry Brinks," both of which work to filter out impurities in the chlorine. The Wet Brinks consists of four "demister" filter elements and a Wet Brinks vessel that houses the elements. The Dry Brinks consists of two filter elements and a Dry Brinks vessel that houses the elements.

**The Policy**

In 2008 Continental issued a renewed "Boiler and Machinery" Policy, No. BM1098443747 to Olin Corp. with effective dates of December 15, 2008 to December 15, 2009, that provided coverage for boiler and machinery insurance, also referred to as "equipment breakdown" insurance.

The Policy provides, in relevant part:

    A. COVERAGE

        We will pay for direct damage to Covered Property caused by a Covered Cause of Loss.

        1. Covered Property
           Covered Property, as used in this Coverage Part, means any property that
           a. You own; or
           b. Is in your care, custody or control and for which you are legally liable.

\* \* \*

3. Covered Cause of Loss
   A Covered Cause of Loss is an "accident" to an "object" shown in the Declarations. An "object" must be in use or connected ready for use at the location specified for it at the time of the "accident".

\* \* \*

C. LIMITS OF INSURANCE

1. We will not pay more than the applicable Limit of insurance shown in the Declarations for all direct damage to Covered Property that results from any "one accident".

\* \* \*

D. DEDUCTIBLE

We will not pay for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance. If more than one "object" is involved in "one accident", only the highest Deductible will apply.

\* \* \*

F. DEFINITIONS

1. "Accident" means a sudden and accidental breakdown of the "object" or a part of the "object". At the time the breakdown occurs, it must manifest itself by physical damage to the "object" that necessitates repair or replacement.

   None of the following is an "accident":

   a. Depletion, deterioration, corrosion or erosion;
   b. Wear and tear;
   c. Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;
   d. Breakdown of any vacuum tube, gas tube or brush;

    e. Breakdown of any electronic computer or electronic data processing equipment;
    f. Breakdown of any structure or foundation supporting the "object" or any of its parts; or
    g. The functioning of any safety or protective device.

* * *

  4. "One Accident" means:

    If an initial "accident" causes other "accidents" all will be considered "one accident". All "accidents" at any one location that manifest themselves at the same time and are the result of the same cause will be considered "one accident".

(Boiler and Machinery Policy, Ex. 23 to Pls.' App., ECF No. 211-1.)

**The 2008 Cell Circuit Failure and Damage**

  Between November 2007 and December 25, 2008, the Henderson Plant experienced fifteen shutdowns and startups to its chlorine production system. There was a planned shutdown between December 1 and 15, 2008, for routine maintenance work. The Plant attempted to come back online on December 15, 2008, but after approximately thirty to forty minutes, a small chlorine leak was discovered due to a hole in the piping coming out of the strong acid tower going to the Dry Brinks demister, and as such, the startup was aborted. The parties dispute the significance and the color of the cell liquor flowing out of the diaphragm cell circuit at shutdown on December 15, 2008.

  The next startup and subsequent shutdown occurred on December 17, 2008. The Wet Brinks vessel imploded the same day, and was unrelated to the leak in the chlorine pipe that caused an aborted startup on December 15, 2008. After the implosion of the Wet Brinks vessel, the Henderson Plant attempted to restart the system on December 23, 2008. The system ran for approximately one hour before a high pressure drop across the

Dry Brinks elements was noted, requiring immediate shutdown.  Again, here the parties dispute the significance and the color of the cell liquor flowing out of the diaphragm cell circuit at shutdown on December 23, 2008.

The Henderson Plant attempted restart of the system on December 25, 2008, and soon thereafter, detected hydrogen readings in liquefaction approaching the explosive range, requiring shutdown.  The parties refer to this event as the "high hydrogen event." Investigation after the December 25, 2008, shutdown revealed that the Cell Circuit had suffered extensive damage and that all 180 cells were seriously damaged and needed to be repaired.  The parties refer to this event as the Cell Circuit "Failure" and "Damage."

**Investigation and Follow Up**

Olin retained Ara Nalbandian of Thielsch Engineering, a mechanical engineer with expertise in failure analysis, metallurgy and mechanical engineering, on or about January 1, 2009, to assist Olin in determining the cause of the failures at the Henderson Plant in December of 2008.  Olin retained Richard Romine to serve as a consultant on the condition of the cells and how to resume operation of the cell room.  In April 2009, counsel for Olin asked Mr. Romine to serve as a technical expert witness in this matter regarding the December 25, 2008, failure of the Cell Circuit.  The parties dispute the manner and extent of Olin's in-house investigation into the cause of the Cell Circuit Failure.

Physical inspection of the diaphragm cells revealed the presence of hematite (red rust) and magnetite dendrites penetrating the diaphragm.  Magnetite ($Fe_3O_4$) is an electrically conductive form of iron oxide that is almost blackish in color.  Hematite ($FE_2O_3$) is a non-conductive iron oxide and is red rust.  Magnetite can be present in the diaphragm cells without causing an increase of hydrogen levels in the chlorine stream. The parties dispute the relevant definition of "corrosion" and the relationship of

magnetite to the corrosion at issue in this case.

Sodium bisulfite is a reducing agent used by the Henderson Plant that is added to the anolyte compartment of the diaphragm cell to neutralize the residual chlorine and oxidizing potential and to reduce problems associated with corrosion of the cathode when the Cell Circuit is shut down and off line.  On December 23, 2008, the Henderson Plant did not have any sodium bisulfite on the property and did not add any sodium bisulfite to the Cell Circuit during the emergency shutdown.  The parties dispute the significance of Olin's use or non-use of sodium bisulfite following the December 23, 2008, shutdown.

**Continental's Handling of Olin's Claims**

Cynthia Dowies of Continental was the Executive General Adjuster assigned to handle the claim at Olin in December 2008, and made telephone contact with Ms. Goding of Olin.  Ms. Dowies visited the Henderson Plant on January 5, 2009, February 18, 2009, and March 11, 2009.  The parties dispute Ms. Dowies' actions while at the Plant.

Continental retained Tom Jur of Engineering Design and Testing ("ED&T") in connection with Olin's claims.  Continental also retained Wayne Britton of Ceway Laboratories to conduct laboratory analysis.  Mr. Jur participated in inspections, meetings and teleconferences at Olin, with Olin representatives and/or with regard to Olin on January 5, 2009, February 18, 2009, March 27, 2009, August 11, 2009 and November 17, 2009.  Mr. Britton conducted laboratory analysis of samples of the diaphragm material from the damaged electrolytic cells, and also participated in meetings at Olin, with Olin representatives and/or with regard to Olin on August 11, 2009 and November 17, 2009.

Continental issued a Reservation of Rights letter to Olin in January 21, 2009. (Ex. 35 to Pls.' App., ECF No. 212-4.)  On October 8, 2009, Continental issued a letter to Olin informing Olin that the events at the Henderson Plant in December 2008 would be split into two claims – the first claim being the December 17 and December 23, 2008, failures

of the Wet and Dry Brinks and the second being the December 25, 2008, Cell Circuit Failure – due to no direct causal relationship between the failure of the Wet and Dry Brinks and that of the Cell Circuit Failure. (Ex. 36 to Pls.' App., ECF No. 212-4.)  In this letter Continental accepted coverage for the December 17 and December 23, 2008, failures of the Wet and Dry Brinks. (*Id.*)  On January 26, 2010, Continental issued its Position Letter to Olin regarding the December 25, 2008, Cell Circuit Failure, stating that "the claimed loss does not fit within the definition of an accident because corrosion is excluded from the definition of accident and there is therefore no coverage under the Policy for the restoration to the cells." (Ex. 34 to Pls.' App., ECF No. 212-4.)  The parties dispute the basis for Continental's coverage determination and the extent of the analysis performed by Mr. Jur and Mr. Britton.

### B. Analysis

Continental asks the Court to determine that the Cell Circuit Failure is not a Covered Cause of Loss under the Policy, and that therefore Continental made a reasonable coverage determination in good faith because it correctly determined that no coverage existed.  As discussed below, the Court cannot find as a matter of law that the Cell Circuit Failure is not a Covered Cause of Loss under the Policy.  The Court finds that genuine issues of material fact exist for each cause of action, and therefore summary judgment is not appropriate. Accordingly, the motion will be denied.

**Breach of Contract**

In Nevada, to succeed on a claim for breach of contract a plaintiff must show: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of

contract may be said to be a material failure of performance of a duty arising under or imposed by agreement").

Here, Olin and Continental do not dispute that the Boiler and Machinery Policy is a valid and binding contract, and instead dispute the terms of the contract.

Generally, questions of contract construction are questions of law and often suitable for determination by summary judgment. *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (1990). However, only when the language of the contract is clear, is judicial interpretation rendered unnecessary. *Great Am. Airway v. Airport Auth. Of Washoe Cnty.*, 743 P.2d 628, 629 (1987). If a contract provision or term is reasonably susceptible to more than one interpretation, it is ambiguous. *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994); *see also State Farm Mut. Auto Ins. Co. v. Fernandez,* 767 F.2d 1299, 1301 (9th Cir. 1985) (stating that "[a]n ambiguity in a contract creates a question of fact"); *Werry v. Phillips Petroleum Co.*, 540 P.2d. 792, 797-98 (Idaho 1975) (noting that where the terms of a contract are ambiguous, its interpretation and meaning is a question of fact). Thus, summary judgment is inappropriate whenever a term or provision in the contract is ambiguous. *Univ. of Nev., Reno v. Stacey*, 997 P.2d 812, 814 (2000). Although a determination that a contract is ambiguous may create questions of fact, the underlying determination that the contract is, in fact, ambiguous is a question of law for the Court. *Margrave*, 878 P.2d at 293.

Here, the Court finds that the terms of the Policy are reasonably susceptible to more than one interpretation as to coverage for the Cell Circuit Failure and Damage, and are therefore ambiguous. Accordingly, resolution of this cause of action requires determinations of questions of fact that are properly submitted to a jury, and summary judgment is inappropriate.

Olin alleges that the Policy obligates Continental to pay in full up to the policy

limits for its losses relating to the Cell Circuit Failure and Damage. Olin alleges that Continental breached the terms of the Policy by issuing its January 26, 2010, denial letter, failing to pay under the Policy, and filing a declaratory judgment action in Missouri on February 26, 2010.

Continental argues that the language of the Policy is unambiguous and excludes coverage of Olin's losses. Continental also argues that the cause of the Cell Circuit Damage is not subject to reasonable dispute. However, the Court disagrees with both contentions.

First, the Court finds that a reasonable jury could determine that the cause of the loss was not simply corrosion as Continental argues. Olin argues that the magnetite found in the Cells formed rapidly as the result of the December 23rd (Dry Brinks) aborted start-up, which was directly caused by the December 17th Wet Brinks implosion. Therefore, Olin argues, the Wet Brinks implosion, and not progressive corrosion, was the proximate and predominant cause of the Cell damage. Olin presents its expert, Mr. Romine, to provide evidence that while some cathode "corrosion" occurs after every system shutdown, that corrosion ordinarily results in the formation of benign red rust, and not black magnetite. Thus, Olin argues, to form problematic amounts of magnetite, as happened in the Cells, there must be some catalyst in addition to normal cathode corrosion, i.e., some moving (predominant) cause that takes the situation from one of typical cathode corrosion to one where black magnetite forms and so penetrates the diaphragms that they are ruined.

Olin offers expert and witness testimony to support its argument that the Wet Brinks implosion initiated a chain of events that directly caused:

(i) Piping material to dislodge and clog the filter elements of the Dry Brinks, causing the Dry Brinks to fail upon restart on December 23, 2008, and requiring

(ii) Another emergency shutdown of the system, this time during the "danger period," which created an upset environment in the Cells and resulted in the rapid formation of significant amounts of magnetite, which penetrated the asbestos Cell diaphragms,

(iii) Leading to the production of excessive and unsafe levels of hydrogen upon restart on December 25, 2008, necessitating the replacement of all 180 Cell diaphragms.

The Court finds that a reasonable jury could agree with Olin's witnesses and experts and find, as Olin argues, that the cause was the implosion of the Wet Brinks, which was the "accident" resulting in the Dry Brinks failure, magnetite growth in the Cells and the resulting damage. Accordingly, a reasonable jury could agree with Olin that these events are all covered under the Policy.

Second, the Court finds that the language of the Policy is ambiguous as to whether it covers the cause of the Cell Circuit Damage. Even if the cause of the loss is the growth of magnetite, the Court finds that a reasonable jury could conclude that this is not synonymous with "corrosion" as defined in the Policy. This is particularly the case where the Policy does not define "corrosion," and the parties dispute the common industry usage of the term "corrosion" as well as the plain meaning of the word "corrosion." Accordingly, the Court finds that summary judgment is inappropriate as to this cause of action.

**Declaratory Judgment**

For the reasons discussed above, the Court cannot find as a matter of law that Olin is not entitled to recover under the Policy. Accordingly, summary judgment as to this cause of action must be denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No.

199) is **DENIED**.

**DATED** this 30th day of January, 2013.

_____
Gloria M. Navarro
United States District Judge